FIRST WESTERN GOVERNMENT SECURITIES, INC.,
ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket Nos. 25760-84, 32276-84,      Filed April 9, 1990.
33758-84, 22524-85,
6400-86, 21748-86,
25978-86, 2786-87.

*Richard J. Sideman, Martha A. Boersch* and *Ellen I. Kahn,* for the petitioners.

*Daniel A. Guy* and *Richard G. Goldman,* for the respondent.

## OPINION

NIMS, *Chief Judge:* These cases are before the Court on petitioners' motions to vacate the assignment of their cases to a special trial judge and to request that a Presidentially appointed Tax Court judge be assigned to consider these cases. By these motions, petitioners challenge the procedures which have been utilized by this Court for over 50 years. See appendix A.

Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows:

---

[1]For purposes of these motions, cases of the following petitioners are consolidated herewith: Sidney P. Samuels, docket No. 32276-84; Samuels, Kramer & Co., docket No. 33758-84; Sidney P. Samuels and Laurel M. Samuels, docket No. 22524-85; First Western Investments, Inc. & Subsidiaries, docket No. 640086; Samuels, Kramer & Co., docket No. 21748-86; Sidney P. Samuels and Laurel M. Samuels, docket No. 25978-86; First Western Investments, Inc. & Subsidiaries, docket No. 2786-87.

| Docket No. | Taxable Year | Deficiency | Sec. 6653(b) | Additions to tax | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6661 | Sec. 6621(c) |
| 25760-84 | 1978 | $6,042,502 | $3,021,251 | --- | --- | --- | --- |
| | 1979 | 10,229,372 | 5,114,686 | --- | --- | --- | --- |
| | 1980 | 30,420,098 | 15,210,049 | --- | --- | --- | --- |
| 32276-84 | 1980 | 412,164 | 206,082 | --- | --- | --- | --- |
| 33758-84 | 1978 | 169,464 | --- | --- | --- | --- | --- |
| | 1979 | 1,136,581 | 568,291 | --- | --- | --- | --- |
| | 1980 | 67,655 | --- | --- | --- | --- | --- |
| 22524-85 | 1981 | 14,225,894 | 7,112,947 | --- | --- | --- | --- |
| 6400-86 | 1981 | 36,004,857 | --- | $18,002,429 | (1) | --- | (2) |
| 21748-86 | 1981 | 20,300 | --- | 10,150 | (1) | --- | (2) |
| 25978-86 | 1982 | 156,996 | --- | 78,498 | (1) | $13,586 | (2) |
| 2786-87 | 1982 | 24,510,631 | --- | 12,255,316 | (1) | 6,127,658 | (2) |

(1) 50 percent of the interest.
(2) Interest will accrue at 120 percent of the normal rate.

Unless otherwise indicated, all references to the Constitution are to the United States Constitution, all section references are to the Internal Revenue Code (Title 26 of the U.S. Code), and all Rule references are to the Tax Court Rules of Practice and Procedure.

At the time of filing their petitions, petitioners First Western Government Securities, Inc., First Western Investments, Inc. & Subsidiaries, and Samuels, Kramer & Co. had their principal places of business in San Francisco, California, Reno, Nevada, and New York, New York, respectively.

At the time of filing their petitions, petitioners Sidney P. and Laurel M. Samuels were residents of San Francisco, California.

## Background

Petitioners' cases raise issues similar to those raised in over 3,000 cases that have been filed in this Court. The common denominator of these cases is that each petitioner other than First Western Government Securities, Inc. (First Western) allegedly entered into financial transactions involving forward contracts for Government mortgage-backed securities with petitioner First Western.

From among the 3,000 above-mentioned cases, 12 cases (not including the cases now before us) were selected as test cases and were initially assigned by the chief judge of this Court to Judge Richard C. Wilbur. Subsequently, following Judge Wilbur's disability retirement on April 30, 1986, the cases were reassigned without objection pursuant to section 7456(d) (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755; see appendix A) and Rule 180, to Special Trial Judge Carleton D. Powell. In due course the cases proceeded to trial and opinion. The trial was held in San Francisco, California, and Washington, D.C., and consumed all or part of 16 weeks of trial time. Approximately 7,000 exhibits were received into evidence. On October 21, 1987, the Court agreed with and adopted the opinion of Special Trial Judge Powell, reported as *Freytag v. Commissioner,* 89 T.C. 849 (1987). Rule 183(c); see appendix B.

Pursuant to section 7443A and Rules 180, 181, and 183, petitioners' cases, which are part of the above-mentioned 3,000 case group, were also assigned to Special Trial Judge Powell. On October 12, 1989, petitioners filed identical motions to vacate the assignment of their cases to Special Trial Judge Powell. On January 16, 1990, respondent filed objections to the motions to vacate and memorandums of points and authorities in support of his objections. On February 15, 1990, petitioners filed reply memorandums to respondent's objections.

These cases have been consolidated solely for purposes of considering the motions to vacate.

The Tax Court was created by Congress under article I of the Constitution and is composed of 19 judges who are appointed by the President, by and with the advice and consent of the Senate. Secs. 7441 and 7443(a) and (b). At least biennially, the judges of the Tax Court designate one judge to be chief judge. Sec. 7444(b). The chief judge may appoint special trial judges. Sec. 7443A(a). Special Trial Judge Powell is one of 14 current special trial judges appointed by the chief judge.

The Court takes judicial notice that as of February 28, 1990, there were 54,428 cases pending in this Court. Of this number, 37,405 cases have been identified as having tax shelter issues. Of this number, 168 groups of related cases identified as involving tax shelter issues have been assigned under section 7443A(b)(4) to special trial judges. These groups encompass approximately 14,500 cases.

Petitioners object to the assignment of these cases to Special Trial Judge Powell on the grounds that (1) section 7443A does not authorize the chief judge of the Tax Court to assign these cases to a special trial judge; and (2) the appointments clause of the United States Constitution article II, section 2, clause 2, does not permit Congress to authorize the chief judge of the Tax Court to appoint special trial judges.

In recognition of the well-established judicial preference of avoiding a constitutional ruling if an independent statutory basis for a decision is available, we will first consider whether section 7443A authorizes the chief judge of the Tax Court to assign these cases to a special trial judge.

## Section 7443A

Petitioners contend that the assignment by the chief judge of these cases to a special trial judge exceeds the authority conferred on the chief judge by section 7443A (see appendix A) because the amount in dispute in each case exceeds $10,000.

Section 7443A(b) authorizes the chief judge to assign the following proceedings to special trial judges:

SEC. 7443A(b). PROCEEDINGS WHICH MAY BE ASSIGNED TO SPECIAL TRIAL JUDGES.—The chief judge may assign—
   (1) any declaratory judgment proceeding,
   (2) any proceeding under section 7463 [see appendix C],
   (3) any proceeding where neither the amount of the deficiency placed in dispute (within the meaning of section 7463) nor the amount of any claimed overpayment exceeds $10,000, and
   (4) any other proceeding which the chief judge may designate,
to be heard by the special trial judges of the court.

Petitioners concede that paragraph (4), when read in isolation, allows the chief judge to assign any proceeding, including the present cases, to a special trial judge. However, petitioners assert that the language "any other proceeding" in paragraph (4) is actually limited to the type of proceedings described in paragraphs (1), (2), and (3) when paragraph (4) is read in conjunction with the other provisions of section 7443A(b). Petitioners contend that unless assignments under paragraph (4) are limited, paragraphs (1), (2), and (3) serve no purpose.

Respondent contends that paragraph (4) was added to section 7443A to allow the chief judge to assign proceedings distinct from those described in paragraphs (1), (2), and (3) to special trial judges. We agree with respondent.

Petitioners rely on *Gomez v. United States,* 490 U.S. 858 (1989), to support their contention that proceedings that may be assigned under paragraph (4) are limited to the proceedings described in paragraphs (1), (2), and (3). *Gomez* addressed the issue of whether the Federal Magistrates Act (the act) authorized U.S. District Courts to assign jury selection in felony trials to magistrates. The Supreme Court determined that Congress did not intend to allow District Courts to assign the duty of selecting juries in felony trials

to magistrates under a clause in the act allowing "additional duties" not otherwise prohibited to be assigned.

In *Gomez,* the Supreme Court analyzed the legislative history and structure of the act and concluded that Congress did not intend to permit jury selection in a felony trial to be assigned to magistrates under the additional duties clause. Specifically, the Supreme Court stated:

By a literal reading this additional duties clause would permit magistates to conduct felony trials. But the carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial. The legislative history, with its repeated statements that magistrates should handle subsidiary matters to enable district judges to concentrate on trying cases, and its assurances that magistrates' adjudicatory jurisdiction had been circumscribed in the interests of policy as well as constitutional constraints, confirms this inference. Similar considerations lead us to conclude that Congress also did not contemplate inclusion of jury selection in felony trials among a magistrate's additional duties. [*Gomez v. United States,* 490 U.S. 858, 871-872 (1989); fn. refs. omitted.]

In contrast, the legislative history and structure of section 7443A(b) show that Congress added paragraph (4) to allow the chief judge to assign proceedings not described in paragraphs (1), (2), and (3) to special trial judges. Thus, applying the Supreme Court's analysis in *Gomez* to section 7443A(b) shows that paragraph (4) authorizes the chief judge to assign the present cases to a special trial judge.

Paragraph (4) was added to present section 7443A(b) in 1984. Prior to 1984, the chief judge was authorized to assign to special trial judges only "any declaratory judgment proceeding, any small tax case, and any other proceeding where the amount in dispute [did] not exceed $5,000." H. Rept. 98-432 at 1568 (1984). These are the proceedings currently found in paragraphs (1), (2), and (3) (with the dollar ceiling raised to $10,000).

The Supplemental Report of the Committee on Ways and Means, H. Rept. 98-432 at 1568 (March 5, 1984), states the reasons for adding paragraph (4) and the explanation of the change as follows:

## Reasons for Change

The committee wishes to clarify that additional proceedings may be assigned to [Special Trial Judges] so long as a Tax Court judge must enter the decision.

## Explanation of Provision

A technical change is made to allow the Chief Judge of the Tax Court to assign any proceeding to a special trial judge for hearing and to write proposed opinions, subject to review and final decision by a Tax Court judge, regardless of the amount in issue. However, special trial judges will not be authorized to enter decisions in this latter category of cases.

Because the legislative history and structure of section 7443A show that Congress intended to allow the chief judge to assign any proceeding to a special trial judge, provided that a Tax Court judge review the opinion and enter the decision, petitioners' reliance on *Gomez* is misplaced.

It is important to note that at the same time paragraph (4) was added to the present section 7443A(b) Congress also amended present section 7443A(c) to provide that a special trial judge could only enter decisions in proceedings assigned under paragraphs (1), (2), and (3).

Section 7443A(c) provides:

SEC. 7443A(c). AUTHORITY TO MAKE COURT DECISIONS.—The court may authorize a special trial judge to make the decision of the court with respect to any proceeding described in paragraph (1), (2), or (3) of subsection (b), subject to such conditions and review as the court may provide.

Before 1984, the present section 7443A permitted special trial judges to enter decisions in any proceedings assigned to them. However, after Congress amended present section 7443A(c), special trial judges were limited to entering decisions in the proceedings described only in subsection (b)(1), (2), and (3).

An assignment made under subsection (b)(1), (2), or (3) differs from an assignment made under subsection (b)(4) because a special trial judge may enter the decision of the Court in an assignment made under the former but not the latter. Furthermore, reports in cases assigned under subsection (b)(4) must be reviewed and adopted by a Presidentially appointed judge of the Court. Rule 183(c); see appendix B. In addition, where appropriate the chief judge may direct

that such report be reviewed by the entire Tax Court. Sec. 7460(b). Thus, petitioners' contention that subsection (b)(4) subsumes subsection (b)(1), (2), and (3) is erroneous.

Accordingly, we conclude that section 7443A(b)(4) authorizes the chief judge to assign the present cases to a special trial judge.

## Appointments Clause

We next consider petitioners' contention that section 7443A(a) authorizing the chief judge of the Tax Court to appoint special trial judges is unconstitutional.

Section 7443A(a) provides:

SEC. 7443A(a). APPOINTMENT.—The chief judge may, from time to time, appoint special trial judges who shall proceed under such rules and regulations as may be promulgated by the Tax Court.

Petitioners assert that article II, section 2, clause 2, of the Constitution (the appointments clause) precludes Congress from vesting the authority to appoint special trial judges in the chief judge of the Tax Court.

The appointments clause provides:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

## Officers of the United States

Petitioners first contend that special trial judges are principal officers of the United States who, under the appointments clause, may only be appointed by the President by and with the advice and consent of the Senate. Respondent argues that special trial judges are not principal or inferior officers of the United States, but employees of the Tax Court. Thus, respondent contends that the appointments clause does not in any way limit Congress' power to authorize the chief judge of the Tax Court to appoint special trial judges.

The appointments clause is not a discretionary provision but applies to the appointment of "all persons who can be said to hold an office under the government." *Buckley v. Valeo,* 424 U.S. 1, 125 (1976) (quoting *United States v. Germaine,* 99 U.S. 508, 509-510 (1879)). However, not all employees of the Government are officers of the United States. Persons who simply assist officers in discharging their duties are "lesser functionaries subordinate to officers of the United States." *Auffmordt v. Hedden,* 137 U.S. 310, 327 (1890); *United States v. Germaine,* 99 U.S. 508 (1879).

In contrast, an officer is an "appointee exercising significant authority pursuant to the laws of the United States." *Buckley v. Valeo, supra* at 126. Whether an individual is an officer rather than an employee "is determined by the manner in which Congress has specifically provided for the creation of the several positions, their duties and appointment thereto." *Burnap v. United States,* 252 U.S. 512, 516 (1920).

The position of special trial judge was created by Congress through an amendment to the Internal Revenue Code. Sec. 958 of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, 734. Special trial judges may be assigned any proceeding and may enter the decision of the Court in any declaratory judgment proceeding, any small tax case, or any case in which the amount in dispute does not exceed $10,000. Sec. 7443A(b) and (c). Special trial judges are appointed for an indeterminate period, may be dismissed without restriction, and receive 90 percent of the compensation of Presidentially appointed Tax Court judges. Sec. 7443A(a) and (d)(1); see *Ex parte Hennen,* 13 Peters 230, 258-259 (1839).

Because special trial judges may be assigned any case and may enter decisions in certain cases, it follows that special trial judges exercise significant authority. Thus, special trial judges are officers, not employees, of the United States.

### Principal and Inferior Officers

Petitioners assert that special trial judges are "principal" officers who must be appointed by the President by and

with the advice and consent of the Senate. Respondent contends that the special trial judges are "inferior" officers. We agree with respondent.

"The Constitution for purposes of appointment * * * divides all its officers into two classes." *United States v. Germaine, supra* at 509. "Principal officers are selected by the President with the advice and consent of the Senate. Inferior officers Congress may allow to be appointed by the President alone, by the heads of departments, or by the Judiciary." *Buckley v. Valeo, supra* at 132.

The line between inferior and principal officers is one that is far from clear, and the framers of the Constitution provided little guidance as to where it should be drawn. *Morrison v. Olson,* 487 U.S. 654, ___ , 108 S.Ct. 2597, 2608 (1988). In determining whether a person is a principal or inferior officer, the Supreme Court has considered whether (1) a principal officer has the power to remove the inferior officer; (2) the duties delegated are subject to limitations; (3) the jurisdiction of the office is limited; and (4) the appointment is temporary or permanent. *Morrison v. Olson,* 108 S.Ct. at 2608-2609.

The chief judge of the Tax Court, a principal officer, has the authority to appoint and remove special trial judges without restriction. Sec. 7443A(a); see *Ex parte Hennen, supra* at 258-259. The duties of special trial judges are defined and limited by the order issued by the chief judge assigning a case to a special trial judge. Rules 180, 181, 182, and 183. Special trial judges may only enter the decision of the Court in declaratory judgment proceedings, small tax cases, and cases in which the amount in dispute does not exceed $10,000, and in no others. Sec. 7443A(c).

Commissioners and magistrates serving other courts are considered to be inferior officers. *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 352 (1931); *Rice v. Ames,* 180 U.S. 371, 378 (1901); *Pacemaker Diagnostic Clinic of America v. Instromedix,* 725 F.2d 537, 545 (9th Cir. 1984). We conclude that the duties and authority of special trial judges are similar to those of commissioners or magistrates.

The commissioners and magistrates in the above cases had more authority and greater protection from removal than special trial judges. Commissioners are empowered to

issue arrest warrants, search warrants, and to arrest and imprison. *Go-Bart Importing Co. v. United States, supra* at 156. Magistrates may preside in any civil or misdemeanor trial with the consent of the parties. 28 U.S.C. sec. 636(c) (1982); 18 U.S.C. sec. 3401(b) (1982). Magistrates are appointed for a term of years and can only be removed for cause while special trial judges are appointed for an indeterminate period and their employment may be terminated without cause, e.g., lack of work for them to perform, budgetary limitations, and the like. 28 U.S.C. sec. 631 (1982); see *Ex parte Hennen, supra* at 258-259.

Considering the limitations placed on the duties, jurisdiction, and tenure of special trial judges, we conclude that special trial judges are inferior, not principal, officers of the United States.

### *Courts of Law*

Petitioners assert that the appointments clause does not allow Congress to vest the authority to appoint inferior officers such as special trial judges in the chief judge of the Tax Court.

In *United States v. Germaine, supra* at 509-510, the Supreme Court stated that:

The Constitution for purposes of appointment very clearly divides all its officers into two classes. The primary class requires a nomination by the President and confirmation by the Senate. But foreseeing that when offices became numerous, and sudden removals necessary, this mode might be inconvenient, it was provided that, in regard to officers inferior to those specially mentioned, Congress might by law vest their appointment in the President alone, in the courts of law, or in the heads of departments. * * *

Petitioners concede that Congress may vest the power to appoint inferior officers in the courts of law. However, petitioners assert that the term "courts of law" refers only to courts created under article III of the Constitution. Thus, petitioners contend that because the Tax Court was created under article I of the Constitution, Congress may not vest the authority to appoint inferior officers in the chief judge of the Tax Court.

Respondent contends that the term "courts of law" refers to article I as well as article III courts, and therefore,

Congress may vest the authority to appoint inferior officers in the chief judge of the Tax Court.

It is well established that the term "courts of law" includes article III courts. *Morrison v. Olson,* 108 S.Ct. at 2609-2611; *Go-Bart Importing Co. v. United States, supra* at 156-157; *Rice v. Ames, supra* at 378.

The parties, however, do not cite a case addressing the issue of whether an article I court is a court of law within the meaning of the appointments clause. The Court's own research has not revealed such a case. Therefore, the issue of whether an article I court is a court of law, under the appointments clause, is one of first impression.

The Tax Court is a court of record established under article I of the Constitution. Sec. 7441. A "court of record" is generally defined as "a court that is required to keep a record of its proceedings, and that may fine or imprison." See Black's Law Dictionary, 319 (5th ed. 1979). We find nothing in the definition of a court of record to preclude a court such as the Tax Court from being a court of law as well.

Black's Law Dictionary, *supra* at 323, defines a court of law as follows:

In a wide sense, any duly constituted tribunal administering the laws of the state or nation; in a narrower sense, a court proceeding according to the course of the common law and governed by its rules and principles, as contrasted with a "court of equity."

The Tax Court fits within the wide definition of the term "court of law" because it is a duly constituted tribunal administering laws of the United States.

The narrower definition of the term "court of law" implies that a court must have common law as contrasted with equitable powers to be a court of law. Whether an article I court generally may exercise common law powers is unclear. See *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 59-60 (1982); cf. *Commodity Futures Trading Commn. v. Schor,* 478 U.S. 833, 856-858 (1986).

Petitioners assert that the language of the appointments clause shows that the term "courts of law" refers to article III courts. Thus, the commonly accepted definition of the term "court of law" is not the relevant definition.

The portion of the appointments clause permitting Congress to delegate the appointment of inferior officers (the delegation clause) provides:

but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

Petitioners contend that using the term "heads of departments" in conjunction with "courts of law" implies that the clause refers to the executive and judicial branches of government. See *Buckley v. Valeo, supra* at 127. Accordingly, petitioners assert that the term "courts of law" refers only to article III, not article I, courts.

The delegation clause was proposed and adopted with no debate as to the meaning of the terms "courts of law" or "heads of departments." M. Farrand, 2 Records of the Federal Convention of 1787, 627-628 (1966) (see appendix D, *infra*); see also *Morrison v. Olson,* 108 S.Ct. at 2610. Thus, whether the term "courts of law" was intended for some reason to refer exclusively to article III courts cannot be determined by examining the history of the delegation clause.

In *Ex parte Hennen, supra* at 257, the Supreme Court considered the term "courts of law" as used in the delegation clause and stated:

The appointing power here designated, in the latter part of the section, was, no doubt, intended to be exercised by the department of the government to which the officer to be appointed most appropriately belonged. The appointment of clerks of courts properly belongs to the courts of law; and that a clerk is one of the inferior officers contemplated by this provision in the constitution cannot be questioned. * * *

The Supreme Court read the delegation power as "intended to be exercised by the department of the government to which the officer to be appointed most appropriately belonged." Thus, the Supreme Court considered that the purpose of the delegation clause was to allow Congress to vest the authority to appoint where it "most appropriately belonged."

In *Ex parte Siebold,* 100 U.S. 371, 397 (1880), the Supreme Court expanded the meaning of the delegation clause by stating:

It is no doubt usual and proper to vest the appointment of inferior officers in that department of the government, executive or judicial, or in that particular executive department to which the duties of such officers appertain. But there is no absolute requirement to this effect in the Constitution * * *

The Court read the delegation clause as permitting Congress to vest the appointment power either in the particular department to which the duties of the officer pertain or in any other department of government. Thus, it is within the discretion of Congress to decide where the appointing power should be placed. *Morrison v. Olson,* 108 S.Ct. at 2610-2611.

Congress vested the authority to appoint special trial judges in the chief judge of the Tax Court. The delegation clause was intended to allow Congress to vest the authority to appoint inferior officers in the Court to which the officer to be appointed most appropriately belonged. Thus, reading the term "courts of law" to exclude the Tax Court would frustrate the purpose for which the delegation clause was created.

Nothing in the cases which have interpreted the delegation clause suggests that the clause was intended to deprive Congress of the power to vest the appointment power in a lawfully created governmental body should that body not fit within the terms "heads of departments" or "courts of law" as those terms were defined when the Constitution was adopted. To the contrary, the Supreme Court has read the delegation clause as giving Congress broad discretion in vesting the appointment power where Congress deems appropriate.

Congress long authorized the former Court of Claims, when an article I court, to appoint its own commissioners and clerk. See W. Cowen, The United States Court of Claims—A History, 216 Ct.Cl. 1, 90-95, 177 (1978). Congress permits administrative agencies to appoint their own administrative law judges who perform duties similar to those of special trial judges. 5 U.S.C. sec. 3105 (1982).

Petitioners suggest that because administrative agencies do not come within the term "heads of departments," Congress may not vest the authority to appoint inferior officers in agencies either. However, the Supreme Court has

upheld the authority of administrative agencies to delegate their adjudicatory functions, including their fact-finding role, to administrative law judges. *Morgan v. United States,* 298 U.S. 468, 481 (1936).

Until 1969, the Tax Court was an independent agency in the executive branch. See *Martin v. Commissioner,* 358 F.2d 63, 64 (7th Cir. 1966). While an independent executive agency, the Tax Court would have been able to appoint its own special trial judges. See *Morgan v. United States, supra* at 481.

In 1969, the Tax Court was established by Congress as an article I court. Sec. 7441. Petitioners, in effect, contend that by elevating the Tax Court to an article I court Congress rendered itself powerless to authorize the Court to appoint its own special trial judges or even its own clerk. See *Ex parte Hennen, supra.* We find this conclusion untenable.

### Legislative Officer

Petitioners further contend that because the Tax Court's authority is derived from article I, the chief judge of the Tax Court is a legislative officer and that legislative officers are not permitted to appoint inferior officers under the appointments clause. See *Buckley v. Valeo, supra* at 127. We do not agree.

While the Tax Court's powers as an article I court are not derived from article III, those powers are nonetheless judicial. *Anthony v. Commissioner,* 66 T.C. 367, 369 (1976). The powers exercised by an officer, not the source of those powers, determine whether an officer is a legislative, executive, or judicial officer under the appointments clause. *Buckley v. Valeo, supra* at 140-141. The Supreme Court held in *Williams v. United States,* 289 U.S. 553, 566-567 (1933), that article I courts exercise judicial power. The Court stated that:

The validity of this view is borne out by the fact that the appellate jurisdiction [or the Supreme Court's jurisdiction] over judgments and decrees of the legislative courts has been upheld and freely exercised under the acts of Congress from a very early period, a practice which can be sustained, as already suggested, only upon the theory that the legislative courts possess and exercise judicial power—as distinguished

from legislative, executive, or administrative power—although not conferred in virtue of the third article of the Constitution.

\*    \*    \*    \*    \*    \*    \*

If the power exercised by legislative courts is not judicial power, what is it? Certainly it is not legislative, or executive, or administrative power, or any imaginable combination thereof.

Because the powers exercised by the Tax Court are judicial powers, not legislative powers, Tax Court judges are judicial officers, not legislative officers. As judicial officers of the United States, Tax Court judges must be appointed by the President by and with the advice and consent of the Senate in accordance with the appointments clause. Sec. 7443(b).

Accordingly, petitioners' contention that the chief judge of the Tax Court is a legislative officer and thus cannot appoint inferior officers such as special trial judges is erroneous.

### Chief Judge's Authority

Petitioners next contend that because the term "courts of law" in the delegation clause is in the plural form, Congress is required to vest the authority to appoint special trial judges in more than one judge of the Tax Court. We do not agree.

The terms "courts of law" and "heads of departments" in the delegation clause refer to the courts and departments which Congress is authorized to create. The term "courts of law" in no way implies that Congress must vest the authority to appoint special trial judges in more than one judge. Thus, we hold that Congress has properly vested the authority to appoint special trial judges in the chief judge of the Tax Court.

Accordingly, petitioners' motions to vacate will be denied.

---

Petitioners have requested that if their motions are denied the Court, pursuant to Rule 193 and section 7482(a)(2), include a statement in its order that there is a controlling question of law involved as to which there is a substantial ground for a difference of opinion and that an immediate appeal from the order may materially advance

the ultimate termination of the litigation. The Court's interlocutory order, a copy of which is attached hereto as appendix E, contains such a statement.

We point out that, while such a statement has been included to comply with the statutory requirement, the views of this Court are unanimous. Resolution of this issue, however, is of critical importance not only for this case but also for the functioning of the Court generally. Accordingly, we have taken the unusual step of certifying this issue for interlocutory appeal in order to obtain expeditious resolution of whatever difference of opinion there might be.

*An appropriate order will be entered.*

Reviewed by the Court.

CHABOT, PARKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, WELLS, WHALEN, and COLVIN, *JJ.*, agree with this opinion.

GERBER and RUWE, *JJ.*, did not participate in the consideration of this opinion.

---

## APPENDIX A

Authority to use special trial assistants originated in section 1114 of the Internal Revenue Code of 1939, as amended by section 503 of the Revenue Act of 1943, Pub. L. 78-235, 58 Stat. 21, 72, when the Board of Tax Appeals existed only as an executive agency. At that time, Congress permitted the presiding judge "from time to time by written order [to] designate an attorney from the legal staff of the court to act as a commissioner in a particular case. * * * [to] proceed under such rules and regulations as may be promulgated by the [Tax] court." H. Rept. 871, 78th Cong., 1st Sess. (1943), 1944 C.B. 901, 954.

That provision was continued without substantial change as section 7456(c) of the 1954 Code. In 1969, when the status of the Tax Court was changed from that of an independent agency of the Executive Branch to that of an article I court, this provision was amended to delete the reference to attorneys from the Tax Court's legal staff and

to provide for appointment of full-time commissioners for indefinite terms. Section 7456(c) was amended by section 958 of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, 734, 1969-3 C.B. 161. In addition, section 957 of the same Act provided for the creation of a streamlined procedure for disputes involving $1,000 or less at the option of the taxpayer (and concurred in by the Tax Court), an amount increased to $1,500 in 1972. (Pub. L. 92-512, sec. 203(b)(2), 86 Stat. 945, 1972-2 C.B. 700).

In 1978, Congress increased the jurisdictional amount to $5,000, again amending section 7456(c) to allow the Tax Court to authorize commissioners to enter decisions in declaratory judgment proceedings, and added section 7463(g), providing the same authority in the case of small tax proceedings. Revenue Act of 1978, Pub. L. 95-600, secs. 336(b)(1), 502(a)(1) and (b), 92 Stat. 2841, 2879, 1978-3 C.B. (Volume 1) 75-76, 113. The provisions allowing entry of decision by commissioners were eventually consolidated in section 7456(d) and expanded in 1982 to encompass all three categories of cases now set forth in section 7443A(b)(1)-(3). Section 7456(d) of the Code was amended by section 106(c)(1) of the Miscellaneous Revenue Act of 1982, Pub. L. 97-362, 96 Stat. 1726, 1730.

The provisions took essentially their present form in 1984 when the term "commissioner" was formally changed to "special trial judge" and a provision corresponding to present section 7443A(b)(4) was added by sections 463(a) and 464(b) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 824. In 1986, the provisions of former section 7456(c) and (d) were moved to new section 7443A by section 1556(a) of Pub. L. 99-514, 100 Stat. 2085, 2754-2755.

## APPENDIX B

RULE 183. CASES INVOLVING MORE THAN $10,000

Except in cases subject to the provisions of Rule 182 [cases involving $10,000 or less] or as otherwise provided, the following procedure shall be observed in cases tried before a Special Trial Judge:

(a) Trial and Briefs: A Special Trial Judge shall conduct the trial of any such case assigned to him for such purpose. After such trial, the parties shall submit their briefs in accordance with the provisions of Rule 151. Unless otherwise directed, no further briefs shall be filed.

(b) Special Trial Judge's Report: After all the briefs have been filed by all the parties or the time for doing so has expired, the Special Trial Judge shall submit his report, including his findings of fact and opinion, to the Chief Judge, and the Chief Judge will assign the case to a Division of the Court.

(c) Action on the Report: The Division to which the case is assigned may adopt the Special Trial Judge's report or may modify it or may reject it in whole or in part, or may direct the filing of additional briefs or may receive further evidence or may direct oral argument, or may recommit the report with instructions. Due regard shall be given to the circumstance that the Special Trial Judge had the opportunity to evaluate the credibility of witnesses, and the findings of fact recommended by the Special Trial Judge shall be presumed to be corrrect.

## APPENDIX C

### SEC. 7463. DISPUTES INVOLVING $10,000 OR LESS.

(a) IN GENERAL.—In the case of any petition filed with the Tax Court for a redetermination of a deficiency where neither the amount of the deficiency placed in dispute, nor the amount of any claimed overpayment, exceeds—

(1) $10,000 for any one taxable year, in the case of the taxes imposed by subtitle A,

(2) $10,000, in the case of the tax imposed by chapter 11,

(3) $10,000 for any one calendar year, in the case of the tax imposed by chapter 12, or

(4) $10,000 for any 1 taxable period (or, if there is no taxable period, taxable event) in the case of any tax imposed by subtitle D which is described in section 6212(a) (relating to a notice of deficiency),

at the option of the taxpayer concurred in by the Tax Court or a division thereof before the hearing of the case, proceedings in the case shall be conducted under this section. Notwithstanding the provisions of section 7453, such proceedings shall be conducted in accordance with such rules of evidence, practice, and procedure as the Tax Court may prescribe. A decision, together with a brief summary of the reasons therefor, in any such case shall satisfy the requirements of sections 7459(b) and 7460.

(b) FINALITY OF DECISIONS.—A decision entered in any case in which the proceedings are conducted under this section shall not be reviewed in any other court and shall not be treated as a precedent for any other case.

(c) LIMITATION OF JURISDICTION.—In any case in which the proceedings are conducted under this section, notwithstanding the provisions of sections 6214(a) and 6512(b), no decision shall be entered redetermining the amount of a deficiency, or determining an overpayment, except with respect to amounts placed in dispute within the limits described in subsection (a) and with respect to amounts conceded by the parties.

(d) DISCONTINUANCE OF PRODEEDINGS.—At any time before a decision entered in a case in which the proceedings are conducted under this

section becomes final, the taxpayer or the Secretary may request that further proceedings under this section in such case be discontinued. The Tax Court, or the division thereof hearing such case, may, if it finds that (1) there are reasonable grounds for believing that the amount of the deficiency placed in dispute, or the amount of an overpayment, exceeds the applicable jurisdictional amount described in subsection (a), and (2) the amount of such excess is large enough to justify granting such request, discontinue further proceedings in such case under this section. ·Upon any such discontinuance, proceedings in such case shall be conducted in the same manner as cases to which the provisions of sections 6214(a) and 6512(b) apply.

(e) AMOUNT OF DEFICIENCY IN DISPUTE.—For purposes of this section, the amount of any deficiency placed in disputed includes additions to the tax, additional amounts, and penalties imposed by chapter 68, to the extent that the procedures described in subchapter B of chapter 63 apply.

(f) QUALIFIED STATE INDIVIDUAL INCOME TAXES.—For purposes of this section, a deficiency placed in dispute or claimed overpayment with regard to a qualified State individual income tax to which subchapter E of chapter 64 applies, for a taxable year, shall be treated as a portion of a deficiency placed in dispute or claimed overpayment of the income tax for that taxable year.

## APPENDIX D

M. Farrand, 2 Records of the Federal Convention of 1787, pp. 627-628 (1966)

Art II. sect. 2. (paragraph 2) To the end of this, Mr Governr. Morris moved to annex "but the Congress may by law vest the appointment of such inferior Officers as they think proper, in the President alone, in the Courts of law, or in the heads of Departments." Mr Sherman 2ded. the motion

Mr. Madison. It does not go far enough if it be necessary at all— Superior Officers below Heads of Departments ought in some cases to have the appointment of the lesser offices.

Mr Govr Morris There is no necessity. Blank Commissioners can be sent—

On the motion

N.H. ay. Mas— no— Ct ay. N.J. ay. Pa. ay. Del. no. Md. divd Va no. N.C. ay— S C no. Geo— no — [Ayes—5; noes—5; divided—1.]

The motion being lost by the equal division (of votes,) It was urged that it be put a second time, some such provision being too necessary, to be omitted. and on a second question it was agreed to nem. con.

APPENDIX E

UNITED STATES TAX COURT
Washington, D.C. 20217

On October 12, 1989, petitioners filed motions to vacate the assignment of special trial judge. On January 16, 1990, respondent filed objections to petitioners' motions for the assignment of these cases to a Presidentially appointed Judge of the United States Tax Court and memorandums of points and authorities in support of his objections. On February 15, 1990, petitioners filed replies to respondent's objections to petitioners' motions to vacate the assignment of special trial judge.

After due consideration of petitioners' above-referenced motions to vacate the assignment of special trial judge, pursuant to I.R.C. section 7482(a)(2) and Rule 193, Tax Court Rules of Practice and Procedure, it is

ORDERED that petitioners' above-referenced motions to vacate the assignment of special trial judge are denied. It is further

ORDERED that these cases are hereby certified for interlocutory appeal to the United States Court of Appeals for the Second Circuit and the United States Court of Appeals for the Ninth Circuit, in that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation in the above-docketed cases. It is further

ORDERED that all proceedings herein are stayed pending resolution of any interlocutory appeal.

ARTHUR L. NIMS III
*Chief Judge*