MATHESON, Circuit Judge.
When the Framers drafted the Appointments Clause of the United States Constitution in 1787, the notion of administrative law judges (“ALJs”) presiding at securities law enforcement hearings could not have been contemplated. Nor could an executive branch made up .of more than 4 million people,[1] most, of them employees. Some of them are “Officers- of the United States,” including principal and inferior- officers, who must be appointed under the Appointments Clause. U.S. Const, art. II, § 2, cl. 2. In this case we consider whether the five ALJs working for, the Securities and Exchange Commission (“SEC”) are employees or inferior officers.
Based on Freytag v. Commissioner of Internal Revenue, 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991), we conclude the SEC ALJ who presided over an administrative enforcement action against Petitioner David Bandimere was, an inferi- or officer. Because the SEC ALJ was not constitutionally appointed, he held his office in violation of the Appointments Clause. Exercising jurisdiction under 15 U.S.C. §§ 77i(a) and 78y(a)(1), we grant Mr. Bandimere’s petition for review.
I. BACKGROUND
The SEC is a federal agency with authority to bring enforcement actions for *1171 violations of federal securities laws. 15 U.S.C. §§ 77h-l, 78d, -78o, 78u-3. An enforcement action may be brought as a civil action in federal court or as an administrative action before an ALJ. In 2012, the SEC brought an administrative action against Mr. Bandimere, a Colorado businessman, alleging he violated various securities laws. An SEC ALJ presided over a trial-like hearing. The ALJ’s initial decision concluded Mr. Bandimere was liable, barred him from the securities industry, ordered him to cease and desist from violating securities laws, imposed civil penalties, and ordered disgorgement. David F. Bandimere, SEC Release No. 507, 2013 WL 5553898, at *61-84 (ALJ Oct. 8, 2013).
The SEC reviewed the initial decision and reached a similar result in a separate opinion. David F. Bandimere, SEC Release No. 9972, 2015 WL 6575665 (Oct. 29, 2015). During the SEC’s review, the agency addressed Mr. Bandimere’s argument that the ALJ was an inferior officer who had not been appointed under the Appointments Clause. Id. at *19. The SEC conceded the ALJ had not been constitutionally appointed, but rejected Mr. Bandimere’s argument because, in its view, the ALJ was not an inferior officer. Id. at *19-21.
Mr. Bandimere filed a petition for review with this court under 15 U.S.C. §§ 77i(a) and 78y(a)(1), which allow an aggrieved party to-obtain review of an SEC order in any circuit court where the party “resides or has his principal place of business.” In his petition, Mr. Bandimere raised his Appointments Clause argument and challenged the SEC’s conclusions regarding -securities fraud liability and sanctions.[2]
II. DISCUSSION
The SEC rejected Mr. Bandimere’s argument that the ALJ presided over his hearing in violation of the Appointments Clause. We review the agency’s conclusion on this constitutional issue de novo. Hill v. Nat’l Transp. Safety Bd., 886 F.2d 1275, 1278 (10th Cir. 1989). We first explain why we must address Mr. Bandimere’s constitutional argument and then address its merits.
A. Constitutional Avoidance
Federal courts avoid unnecessary adjudication of constitutional issues. City of Mesquite v. Aladdin’s Castle, Inc., 455 U.S. 283, 294, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). Here, we must consider the Appointments Clause issue.
In its opinion, the SEC concluded Mr. Bandimere committed two securities fraud violations and two securities registration violations.[3] In his petition for re *1172 view, Mr. Bandimere challenges the SEC’s findings of securities fraud liability as arbitrary and capricious, but- he does not challenge the registration violations on these non-constitutional grounds. He attacks the SEC’s opinion as a whole, however, including both his securities fraud and registration liability, based on the Appointments Clause.[4] Because the sole argument attacking his registration liability is constitutional, we cannot avoid the Appointments Clause question. And because resolving this, question relieves Mr. Bandimere of all liability, we need not .address his remaining arguments on securities fraud liability.
B. Appointments Clause Overview
The Appointments Clause states:
[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.
U.S. Const. art. II, § 2, cl. 2.
The Appointments Clause embodies both separation of powers and checks and balances. Ryder v. United States, 515 U.S. 177, 182, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995) (“The Clause is a bulwark against one branch aggrandizing its power at the expehse of another branch....”).[5] By defining unique roles for each branch in appointing officers, the Clause separates power. It also checks and balances the appointment authority of each branch by providing (1) the President may appoint principal officers only with Senate approval and (2) Congress máy confer appointment power over inferior officers to the President, courts, or department heads but may not itself make appointments.[6]
The Appointments Clause also promotes public accountability by identifying the public officials who appoint officers. Edmond v. United States, 520 U.S. 651, 660, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997). And it prevents the diffusion of that power by restricting it to specific public officials. Ryder, 515 U.S. at 182, 115 S.Ct. 2031; Freytag, 501 U.S. at 878, 883, 111 *1173 S.Ct. 2631. “The Framers understood ... that by limiting the appointment power, they could ensure that those who wielded it were accountable to political force and the will of the people.” Freytag, 501 U.S. at 884, 111 S.Ct. 2631.
C. Inferior Officers and Freytag
1. Inferior Officers and the Supreme Court
The Supreme Court has. defined an officer generally as “any appointee exercising significant authority pursuant to the laws of the United States.” Buckley v. Valeo, 424 U.S. 1, 126, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam). The.term “inferior officer” “connotes a relationship with some higher ranking officer or officers below the President: Whether one is an ‘inferior’ officer depends on whether he has a superior.” Edmond, 520 U.S. at 662, 117 S.Ct. 1573.[7]
This description of “inferior” may aid in understanding the distinction between principal and inferior officers. But we are concerned here with the distinction between inferior officers and employees. Like inferior officers, employees—or “lesser functionaries”—are subordinates. Buckley, 424 U.S. at 126 n.162, 96 S.Ct. 612.
Justice Breyer has provided this- summary of the different ways the Supreme Court has described inferior officers:
Consider the [Supreme] Court’s definitions: Inferior officers are, inter alia, (1) those charged with “the administration and enforcement of the public law,” Buckley, 424 U.S. at 139 [96 S.Ct. 612]; (2) those granted “significant authority,” id. at 126 [96 S.Ct. 612]; (3) those with “responsibility for conducting civil litigation in the courts of the United States,” id. at 140 [96 S.Ct. 612]; and (4) those “who can be said to hold an office,” United States v. Germaine, 99 U.S. 508, 510 [25 L.Ed. 482] (1879), that has been created either by “regulations” or by “statute,” United States v. Mouat, 124 U.S. 303, 307-08 [8 S.Ct. 505, 31 L.Ed. 463] (1888).
Free Enter. Fund v. PCAOB, 561 U.S. 477, 539, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010) (Breyer, J., dissenting) (citation style altered and some citations omitted).
The list below contains examples of inferior officers drawn from Supreme Court cases spanning more than 150 years:
• a district court clerk, In re Hennen, 38 U.S. (13 Pet.) 230, 258, 10 L.Ed. 138 (1839);
*1174 • an “assistant-surgeon,” United States v. Moore, 95 U.S. 760, 762, 24 L.Ed. 588 (1877);
• “thousands of clerks in the Departments of the Treasury, Interior, and the othe[r]” departments, Germaine, 99 U.S. at 511 (1878);
• an election supervisor, Ex parte Siebold, 100 U.S. 371, 397-98, 25 L.Ed. 717 (1879);
• a federal marshal, id. at 397;
• a “cadet engineer” appointed by the Secretary of the Navy, United States v. Perkins, 116 U.S. 483, 484-85, 6 S.Ct. 449, 29 L.Ed. 700 (1886);
• a “commissioner of the circuit court,” United States v. Allred, 155 U.S. 591, 594-96, 15 S.Ct. 231, 39 L.Ed. 273 (1895);
• a vice consul temporarily exercising the duties of a consul, United States v. Eaton, 169 U.S. 331, 343, 18 S.Ct. 374, 42 L.Ed. 767 (1898);
• extradition commissioners, Rice v. Ames, 180 U.S. 371, 378, 21 S.Ct. 406, 45 L.Ed. 577 (1901);
• a United States commissioner in district court proceedings, Go-Bart Importing Co. v. United States, 282 U.S. 344, 352-54, 51 S.Ct. 153, 75 L.Ed. 374 (1931);
• a postmaster first class, Buckley, 424 U.S. at 126, 96 S.Ct. 612 (1976) (citing Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926));
• Federal Election Commission (“FEC”) commissioners, id.;
• an independent counsel, Morrison v. Olson, 487 U.S. 654, 671, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988);
• Tax Court special trial judges, Freytag, 501 U.S. at 881-82, 111 S.Ct. 2631 (1991); and
• military judges, Weiss v. United States, 510 U.S. 163, 170, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994); Edmond, 520 U.S. at 666, 117 S.Ct. 1573 (1997).[8]
We think these examples are relevant and instructive. Although the Supreme Court has not stated a specific test for inferior officer status, “[e]fforts to define [‘inferior Officers’] inevitably conclude that the term’s sweep is unusually broad,” Free Enter. Fund, 561 U.S. at 539, 130 S.Ct. 3138 (Breyer, J., dissenting), and the Freytag opinion provides the guidance needed to decide this appeal.
2. Freytag
The question in Freytag was whether the Tax Court had authority to appoint special trial judges (“STJs”) under the Appointments Clause. 501 U.S. at 877-92, 111 S.Ct. 2631. As a threshold matter, the Court addressed whether STJs were inferior officers or employees. Id. at 880-82, 111 S.Ct. 2631. That question, strongly resembles the one we face here. In our view, Freytag controls the result of this case.
Under the then-applicable 26 U.S.C. § 7443A(b), the Tax Court could assign four categories of cases to STJs. Id. at 873,-111 S.Ct. 2631. For the first three categories, § 7443A(b)(1), (2), and (3), “the Chief Judge [could] assign the special trial judge not only to hear and report on a case but also to decide-it.” Id. In other words, STJs could make final decisions in those cases. But in the fourth category, § 7443A(b)(4), STJs lacked final decisionmaking power: “the chief judge [could] authorize the special trial judge only to hear the case and prepare proposed findings and an opinion. The actual decision then [was] rendered by a regular judge of the Tax Court.” Id.
*1175 The Tax Court assigned the petitioners’ case to the STJ under § 7443A(b)(4), the fourth category, which did not allow STJs to enter final decisions. Id. at 871-73, 111 S.Ct. 2631. The STJ issued a proposed opinion concluding the petitioners were liable, and the Tax Court adopted it. Id. at 871-72, 111 S.Ct. 2631.[9] On appeal, the petitioners argued the STJs were inferior officers under the Appointments Clause and that the chief judge of the Tax Court could not appoint them because he was not the President, a court of law, or a department head. Id. at 878, 111 S.Ct. 2631. The government contended STJs were not inferior officers because they did not have authority to enter a final decision in petitioners’ case. Id. at 881, 111 S.Ct. 2631.
The Court first expressly approved prior decisions from the Tax Court and the Second Circuit that .held. STJs were inferior officers. Id. “Both courts considered the degree of authority exercised by the special trial judges to be so ‘significant’ that it was inconsistent with the classifications of ‘lesser functionaries’ or employees.” Id. (discussing Samuels, Kramer & Co. v. Comm’r of Internal Revenue, 930 F.2d 975 (2d Cir. 1991); First W. Gov’t Sec., Inc. v. Comm’r of Internal Revenue, 94 T.C. 549 (1990)).[10]
The Court then turned to the government’s argument that the STJs were employees because they “lack[ed] authority to enter a final decision” under § 7443A(b)(4). Id. The Court said the argument “ignore[d] the significance of the duties and discretion that special trial judges possess.” Id. First, the STJ position was “established' by Law.” Id. (quoting U.S. Const. art. II, § 2, cl. 2). Second, “the duties, salary, and means of appointment for that' office are specified by statute.” Id. “These characteristics,” the Court stated, “distinguish special trial judges from special masters, who are hired by Article III courts on a temporary, episodic basis, whose positions are not established by law, and whose duties and functions are not delineated in a statute.” Id. Third, STJs “perform more than ministerial tasks. They take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders. In the course of carrying out these important functions, the [STJs] *1176 exercise significant discretion.” Id. at 881-82, 111 S.Ct. 2631. Accordingly, the Court held STJs were inferior officers. Id.
Next, the Court addressed a standing argument from the government. Id. at 882, 111 S.Ct. 2631. The government had conceded STJs act as inferior officers when hearing cases under § 7443A(b)(1), (2), and (3), but argued petitioners “lack[ed] standing to assert the rights of taxpayers whose cases [were] assigned to [STJs] under [those three categories].” Id.
The Court stated, “Even if the duties of [STJs] under [§ 7443A(b)(4) ] were not as significant as we and the two courts have found them to be, our conclusion would be unchanged.” Id. (emphasis added). The Court explained that an inferior officer does not become an employee because he or she “on occasion performs duties that may be performed by an employee not subject to the Appointments Clause.” Id. “If a special trial judge is an inferior officer for purposes of subsections (b)(1), (2), and (3), he is an inferior officer within the meaning of the Appointments Clause and he must be properly appointed.” Id. The Court thus rejected the government’s standing argument as “beside the point.” Id.
In the end, the Freytag majority held the Tax Court was a “Cour[t] of Law” with authority to appoint inferior officers like the STJs. Id. at 890, 892, 111 S.Ct. 2631. Justice Scalia’s partial concurrence, joined by three other justices, agreed with the majority’s conclusion regarding the STJs’ status: “I agree with the Court that a special trial judge is an ‘inferior Office[r]’ within the meaning of [the Appointments Clause].” Id. at 901, 111 S.Ct. 2631 (Sealia, J., concurring) (first alteration in original). Thus, a unanimous Supreme Court concluded STJs were inferior officers.
D. SEC ALJs
The SEC conceded in its opinion that its ALJs are not appointed by the President, a court of law, or the head of a department. SEC Release No. 9972, 2015 WL 6575665, at *19. The sole question is whether SEC ALJs are inferior officers under the Appointments Clause. Under Freytag, we must consider the creation and duties of SEC ALJs to determine whether they are inferior officers. 501 U.S. at 881-82, 111 S.Ct. 2631.
The APA created the ALJ position. 5 U.S.C. § 556(b)(3); see also Mullen v. Bowen, 800 F.2d 535, 540 n.5 (6th Cir. 1986) (“[T]he ALJ’s position is not a creature of administrative law; rather, it is a direct creation of Congress under the [APA].”). Section 556 of the APA describes the duties of the “presiding employe[e]” at an administrative adjudication. 5 U.S.C. § 556. It states, “There shall preside at the taking of evidence ... (1) the agency; (2) one or more members of the body which comprises the agency; or (3) one or more administrative law judges appointed under section 3105 of this title.” Id. § 556(b).
Under 5 U.S.C. § 3105, “Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in. accordance with [5 U.S.C. §§ 556, 557].” Agencies hire ALJs through a merit-selection process administered by the Office of Personnel Management (“OPM”), which places ALJs within the civil service (i.e., the “competitive service”). 5 U.S.C. § 1302; 5 C.F.R. § 930.201. ALJ applicants must be licensed attorneys with at least seven years of litigation experience. 5 - C.F.R. § -930.204; Office of Pers. Mgmt,, Qualification Standard for Administrative Law Judge Positions, https://perma.cc/2G7J-X5 BW. OPM administers an exam and uses the results to rank applicants. 5 C.F.R. § 337.101. Agencies may select an ALJ *1177 from the top three ranked candidates.[11] The SEC’s Chief ALJ hires from the top three candidates subject to “approval and processing by the [SEC’s] Office of Human Resources.” Notice of Filing at 2, Timber-vest, LLC, File No. 3-15519, https://perma. cc/G8M2-36P3 (SEC Division of Enforcement filing in administrative enforcement action). Once hired, ALJs receive career appointments, 5 C.F.R. § 930.204(a), and are removable only for good cause, 5 U.S.C. § 7521. Their pay is detailed in 5 U.S.C. § 5372. The SEC currently employs five ALJs. Office of Pers. Mgmt., ALJs by Agency, https://perma.cc/6RYA-VQFV.
The SEC has authority to delegate “any of its functions” except rulemaking to its ALJs. 15 U.S.C. § 78d-l(a). And SEC regulations task ALJs with “conducting] hearings” and make them “responsible for the fair and orderly conduct of the proceedings.” 17 C.F.R. § 200.14. SEC ALJs “have the authority to do all things necessary and appropriate to discharge [their] duties.” 17 C.F.R. § 201.111.[12] The table below lists examples of those duties.
*1178 [[Image here]]
*1179 E. SEC ALJs Are Inferior Officers Under Freytag
Following Freytag, we conclude SEC ALJs are inferior officers under the Appointments Clause. As the SEC acknowledges, the ALJ who presided over Mr. Bandimere’s hearing was not appointed by the President, a court of law, or a department head. He therefore held his office in conflict' with the Appointments Clause when he presided over Mr. Bandi-mere’s hearing.
Freytag held that STJs were inferior officers based on three characteristics. Those three characteristics exist here: (1) the position of the SEC ALJ was “established by Law,” Freytag, 501 U.S. at 881, 111 S.Ct. 2681 (quoting U.S. Const. art. II, § 2, cl. 2); (2) “the duties, salary, and means of appointment ... are specified by statute,” id.; and (3) SEC ALJs “exercise significant discretion” in “carrying out ... important functions,” id. at 882, 111 S.Ct. 2631.
First, the office of the SEC ALJ was established by law. The APA established the ALJ position. 5 U.S.C. § 556(b)(3). In addition, the Securities and Exchange Act of 1934 authorizes the SEC to delegate “any of its functions” with the exception of rulemaking to ALJs,[13] and 17 C.F.R. § 200.14, a regulation promulgated under the Act, gives the agency’s “Office of Administrative Law Judges” power to “conduct hearings” and “proceedings.” See 15 U.S.C. § 78d-1(a) (authorizing SEC to delegate functions to ALJs); 17 C.F.R. § 200.1 (stating statutory basis for SEC regulations).
,. Second, statutes set forth SEC ALJs’ duties, salaries, and means of appointment. 5 U.S.C. §§ 556-57 (duties); id. § 5372(b) (salary); id. §§ 1302, 3105 (means of appointment).[14] SEC ALJs are not “hired ... on a temporary, episodic basis.” Freytag, 501 U.S. at 881, 111 S.Ct. 2631. They receive career appointments and can be removed only for good cause. 5 U.S.C. § 7521; 5 C.F.R. § 930.204(a).
Third, SEC ALJs exercise significant discretion in performing “important functions” commensurate with the STJs’ functions described in Freytag. SEC ALJs have “authority to do all things necessary and appropriate to discharge his or her duties.”[15] This includes authority to shape the administrative record by taking testimony,[16] regulating document production and depositions,[17] ruling on the admissibili *1180 ty of evidence,[18] receiving evidence,[19] ruling on dispositive and procedural motions,[20] issuing subpoenas,[21] and presiding over trial-like hearings.[22] When presiding over trial-like hearings, SEC ALJs make credibility findings to which the SEC affords “considerable weight” during agency review.[23]
They also have authority to issue initial decisions that declare respondents liable and impose sanctions.[24] When a respondent does not timely seek agency review, “the action of [the ALJ] shall, for all purposes, including appeal or. review thereof, be deemed the action of the Commission.”[25] Even when a respondent timely seeks agency review, the agency may decline to review initial decisions adjudicating certain categories of eases.[26]
Further, SEC ALJs have power to enter default judgments[27] and otherwise steer the outcome of proceedings by holding and *1181 requiring attendance at settlement conferences.[28] They also have authority to set aside, make permanent,, limit, or suspend temporary sanctions that the SEC itself has imposed.[29]
In sum, SEC ALJs closely resemble the STJs described in Freytag. Both occupy offices established by law; both have duties, salaries, and means of appointment specified by statute; and both exercise significant discretion while performing “important functions” that are “more than ministerial tasks.” Freytag, 501 U.S. at 881-82, 111 S.Ct. 2631; see also Samuels, 930 F.2d at 986. Further, both perform similar adjudicative functions as set out above.[30] We therefore hold that the SEC ALJs are inferior officers who must be appointed in conformity with the Appointments Clause.[31]
This holding serves the purposes of the Appointments Clause. The current ALJ hiring process whereby the OPM screens applicants, proposes three finalists to the SEC, and then leaves it to somebody at the agency to pick one, is a diffuse process that does not lend itself to the accountability that the Appointments Clause was written to secure. In other words, it is unclear where the appointment buck stops. The current hiring system would suffice under the Constitution if SEC ALJs were employees, but we hold under Freytag that they are inferior officers who must be *1182 appointed as the Constitution commands. As the Supreme Court said in Freytag, “The Appointments Clause prevents Congress from dispensing power too freely; it limits the universe of eligible recipients of the power to appoint.” 501 U.S. at 880, 111. S.Ct. 2631.
F. The SEC’s Arguments
1. Final Decision-Making Power
In rejecting Mr. Bandimere’s Appointments Clause argument during agency review, the SEC’s opinion concluded the ALJs are not inferior officers because they cannot render final decisions and the agency retains authority to review ALJs’ decisions de novo.
The SEC makes similar arguments here. It contends the Freytag Court relied on the STJs’ final decision-making power when it held they were inferior officers. The agency draws on Landry v. FDIC, 204 F.3d 1125 (D.C. Cir. 2000), in which the D.C. Circuit attempted to distinguish Freytag and held that FDIC ALJs were employees. 204 F.3d at 1134. In Landry, the D.C. Circuit stated Freytag “laid exceptional stress on the STJs’ final decision-making power,” Id. The court therefore considered dispositive.the FDIC ALJs’ inability to render final decisions. Id.
This past August, the D.C. Circuit addressed the same question we face here. Raymond J. Lucia Cos., Inc. v. SEC, 832 F.3d 277, 283 (D.C. Cir. 2016). The D.C. Circuit followed Landry and concluded that SEC ALJs are employees and not inferior officers. Id. at 283-89. The holding was based on the court’s conclusion that SEC ALJs cannot render final decisions. Id. at 285 (“[T]he parties principally disagree about whether [SEC] ALJs issue final decisions of the [SEC]. Our analysis begins, and ends, there.”). We disagree with the SEC’s reading of Freytag and its argument that final decision-making power is dispositive to the question at hand.
First, both the agency and Landry place undue- weight on final decision-making authority. Freytag stated the government’s argument that STJs should be deemed employees when they lacked the ability to enter final decisions “ignore[d] the significance of the duties and discretion that [STJs] possess.” 501 U.S. at 881, 111 S.Ct. 2631. The Supreme Court held STJs, are inferior officers because their office was established by law; their duties, salaries and means of appointments were “specified by statute”; and they “exercise[d] significant discretion” in “carrying out important functions.” Id. at 881-82, 111 S.Ct. 2631.
Moreover, Freytag agreed with the Second Circuit’s Samuels decision, id. which held that STJs are inferior officers because they “exercise a great deal of discretion and perform important functions” in § 7443A(b)(4) eases, Samuels, 930 F.2d at 986. The Second Circuit did not rely on the STJs’ ability to enter final decisions under § 7443A(b)(1), (2), and (3). Id. at 985-86. Rather, it said STJs are inferior officers even though “the ultimate decisional authority in cases under section 7443A(b)(4) rests with the Tax Court judges.” Id. at 985. Like Freytag) Samuels hinged on the STJs’ duties and not .on final decision-making power.
After stating its holding that STJs are inferior officers based on their duties, the Freytag Court responded to the government’s standing argument. 501 U.S. at 882, 111 S.Ct. 2631. The Court stated, “Even if the duties of special trial judges under subsection (b)(4) were not as significant as we and the two courts have found them to be, our conclusion would be unchanged.” Id. (emphasis added). This sentence reaffirms what the Court previously concluded: it “found” the duties of the STJs are sufficiently significant to make them inferior officers. Id. That conclusion did not de *1183 pend on the STJs’ authority to make final decisions.[32]
Further, the Court’s “even if’ argument was a response to (1) the government’s concession that STJs are inferior officers in § 7443A(b)(1), (2), and (3) cases, where they had final decision-making authority,[33] and (2) the government’s argument that the petitioners lacked standing to .rely on the STJs’ authority in those types of cases to establish the STJs’ inferior officer status in § 7443A(b)(4) cases.[34] Based on the government’s concession, the Court stated STJs could not transform to employees by “performfing] duties that may be performed by an employee not subject to the Appointments Clause.” Id. The Court thus rejected the standing argument as “beside the point.” Id.
The Court’s rejection of the government’s standing argument is a far cry from holding that final decision-making authority is the predicate for inferior officer status. Indeed, the Court did not hold that STJs are inferior officers because they have final decision-making authority in § 7443A(b)(1), (2), and (3) cases. Rather, it accepted the government’s concession that STJs are inferior officers in those cases for the. purpose of responding to the standing argument. Thus, the Court’s “even if’ argument did not modify or supplant its holding that STJs were inferior officers based on the “significance of [their] duties and discretion.” Id. at 881, 111 S.Ct. 2631.
The SEC reads Freytag as elevating final decision-making authority to the crux of inferior officer status. But properly read, Freytag did not place “exceptional stress” on final decision-making power.[35] To the contrary, it rebutted the government’s argument'that STJs were inferior officers when they lacked final decision-making power (i.e., § 7443A(b)(4) cases) because the argument “ignore[d] the significance of the duties and discretion that [STJs] possess.” Freytag, 501 U.S. at 881, 111 S.Ct. 2631.
Final decision-making power is relevant in determining whether a public servant *1184 exercises significant authority. But that does not mean every inferior officer must possess final decision-making power. Frey-tag’s holding undermines that contention. In short, the Court did not make final decision-making power the essence of inferior officer status. Nor do we.
Second, the SEC’s argument finds no support in other Supreme Court decisions describing inferior officers. In Edmond, the Supreme Court considered final decisionmaking power as relevant to the difference between a principal and inferior officer, not the difference between an officer and an employee. 520 U.S. at 665, 117 S.Ct. 1573. The Court held Coast Guard Court of Criminal Appeals judges were inferior officers instead of principal officers because they “ha[d] no power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers, and hence they [were] inferior within the meaning of Article II.” Id. In other words, the Court classified the judges as inferior officers even though they had no final decision-making power. Id.
In Buckley, the Court held FEC commissioners were inferior officers because they exercised “significant authority,” including the “responsibility for conducting civil litigation in the courts of the United States for vindicating public rights.” 424 U.S. at 125-26, 140, 96 S.Ct. 612. The Buckley Court analyzed significant authority as a matter of degree without discussing final decision-making power. Id.; see also Ass’n of Am. Railroads v. U.S. Dep’t of Transp., 821 F.3d 19, 38 (D.C. Cir. 2016) (stating Edmond “clarified [that] the degree of an individual’s authority is relevant in marking the line between officer and nonofficer, not between principal and inferior officer” (citing Edmond, 520 U.S. at 662, 117 S.Ct. 1573)).
The Court has not equated significant authority with final decision-making power in Buckley, Freytag, Edmond, or elsewhere. Nor has it indicated that each of the officers it has deemed inferior possesses that power.[36] Further, Justice Breyer has stated that “efforts to define [‘inferior Officer’] inevitably conclude that the term’s sweep is unusually broad.” Free Enter. Fund, 561 U.S. at 539, 130 S.Ct. 3138 (Breyer, J., dissenting).
Third, supervision by superior officers is not unique to employees. It is a common feature of inferior officers as well.[37] The military judges at issue in Edmond were *1185 inferior officers based on their inability to “render a final decision ... unless permitted to do so by other Executive officers.” 520 U.S. at 665, 117 S.Ct. 1573. Thus, the fact that the SEC can reverse its ALJs does not mean they are employees rather than inferior officers.
2. Deference to Congress
The SEC further contends Congress intended its ALJs to be employees. It urges us to “accor[d] significant weight” to congressional intent in determining whether the ALJs are inferior officers. Aplee. Br. at 41.
The. SEC overstates its arguments. In its brief, it has not cited statutory language expressly stating ALJs are employees for purposes of the Appointments Clause. Nor has it cited legislative history indicating Congress has specifically addressed the question whether ALJs are inferior officers. And to the extent the SEC seeks to infer congressional intent from congressional action, the evidence is mixed.
On the one hand, the SEC stresses that Congress was “deliberate” in constructing the statutory framework governing the hiring of ALJs and the powers ALJs have in relation to their agencies. Aplee. Br. at 27. This includes placing the position within the civil service and tasking the OPM to prescribe rules governing ALJ hiring. 5 U.S.C. §§ 1302, 3105, 3313; .5 C.F.R. § 930.201. The SEC argues this suggests congressional intent to classify ALJs as employees. But, on the other hand, and as detailed previously, Congress granted significant authority to SEC ALJs in the APA and the Exchange Act and has authorized the agency to delegate “any of its [non-rulemaking] functions” to ALJs. 5 U.S.C. §§ 556, 557; 15 U.S.C. § 78d-1(a).
When it has faced a case or controversy concerning separation of powers, the Supreme Court has determined whethér the legislative or executive branches or both have violated the Constitution. See, e.g., Bowsher v. Synar, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986); INS v. Chadha, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); Buckley, 424 U.S. at 1, 96 S.Ct. 612; Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). This has been so even when a congressional scheme was carefully devised and effective. Bowsher, 478 U.S. at 736, 106 S.Ct. 3181.[38] However “carefully devised” the ALJ system may be generally and the SEC ALJ program particularly, see Lucia, 832 F.3d at 289, that should not excuse failure to comply with the Appointments Clause. As a circuit court, we must follow Supreme Court precedent. Hutto v. Davis, 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam) (“[A] precedent of [the Supreme] Court must be followed by the lower federal courts.”)^ And as explained, Freytag governs our result here.
Moreover, the Supreme Court’s treatment of the government’s deference argument in Freytag is instructive here. The government contended the Supreme Court should “defer to the Executive Branch’s decision that there has been no legislative encroachment on Presidential prerogatives under the Appointments Clause.” 501 U.S. at 879, 111 S.Ct. 2631. The Court rejected *1186 that argument: “[T]he Clause forbids Congress to grant the appointment power to inappropriate members of the Executive Branch. Neither Congress nor the Executive can agree to waive this structural protection.... The structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic.” Id. at 880, 111 S.Ct. 2631; see also NLRB v. Noel Canning, — U.S. —, 134 S.Ct. 2550, 2594, 189 L.Ed.2d 538 (2014) (Scalia, J., concurring in the judgment) (“[T]he political branches cannot by agreement alter the constitutional structure”). As stated, we question whether Congress has clearly classified SEC ALJs as employees. But even if it had, we would still follow Freytag.
G. The Dissent’s Arguments
We address three of the dissent’s main arguments. First, it points out the STJs had “power to bind the Government and third parties,” and the “SEC ALJs do not.” Dissent at 1194. This is the final authority argument the SEC makes here and that the D.C. Circuit relied on in Landry and Lucia. We have addressed this argument above.
Second, the dissent contends that “even where [STJs] could not enter final decisions, their initial decisions had binding effect.” Id. at 1194. The SEC did not make this argument. In any event, the contention is incorrect because it rests on a misapprehension of the Tax Court judges’ and STJs’ roles in cases where the Tax Court judges must make the final decisions, such as Freytag. See Ballard v. Comm’r of Internal Revenue, 544 U.S. 40, 44, 125 S.Ct. 1270, 161 L.Ed.2d 227 (2005) (citing 26 U.S.C. § 7443A(c)) (stating Tax Court judges must make the “[ultimate decision in cases involving tax deficiencies that exceed $50,000”). The dissent asserts that the STJs in effect made the final decisions in those cases because the Tax Court “purported to adopt its [STJs’] opinions verbatim in 880 out of 880 cases between 1983 and 2005.” Dissent at 8. At first blush, that assertion suggests the Tax Court rubber stamped 880 STJ recommendations without making a single change. But a full reading of the dissent’s cited sources shows that assertion is incorrect.
In Ballard, a case the dissent mistakenly relies on to attempt to differentiate STJs and SEC ALJs,[39] the Supreme Court described the Tax Court’s process of reviewing STJ’s recommendations based on the government’s own explanation of how Tax Court judges and STJs worked together. 544 U.S. at 58, 65, 125 S.Ct. 1270 (stating the government “describe[d] and defend[ed]” its process). Beginning in 1983, STJs submitted “reports” to the Tax Court judges tasked with making the final decision in each particular case. Id. at 58, 125 S.Ct. 1270. In each case, the Tax Court judge treated the report as an “in-house draft” and engaged in a “collaborative process” with the STJ in which they “worked over” the report and produced an “opinion of the [STJ].” Id. at 57, 125 S.Ct. 1270. “When the collaborative process [was] complete, the Tax Court judge issue[d] a decision in all cases agreeing with and adopting the opinion of the [STJ].” Id. (alterations and quotations omitted). In sum, the Tax Court judges adopted opinions they had a hand in supervising and producing.
*1187 The law review article the dissent cites explains why it is simply not true that the Tax Court rubber stamped 880 of 880 STJ opinions: “the Tax Court judge treated the report and recommendation of the [STJ] as a draft of an opinion that would, after a collaborative effort with the Tax Court judge, ultimately be adopted by the Tax Court.” Christopher M. Pietruszkiewicz, Conflating Standards of Review in the Tax Court: A Lesson in Ambiguity, 44 Hous. L. Rev. 1337, 1360 (2008). The dissent’s conclusion that the STJs’ “initial report often decided the case,” Dissent at 1195, overstates the STJs’ role. And their actual role hardly supports the notions that Tax Court judges “appeared to defer to its [STJs] on conclusions of law” or “that [the STJs] had as much authority as Tax Court judges themselves.” Id. at 1195, 1196.[40] Even if the Tax Court did not review STJs’ recommendations in most cases, that would not distinguish STJs from SEC ALJs. Most of the SEC ALJs’ initial decisions—about 90 percent—become final without any review or revision from an SEC Commissioner.[41]
The dissent is left with its argument that in certain cases the STJs “had the power to bind third parties and the government itself.” Id. at 1196 n.2. But, as previously explained, Freytag did not regard this ground as dispositive to hold the STJs are inferior officers.[42]
Moreover, even if the STJs exercise more authority than the SEC ALJs, it does not follow that the former are inferior officers and the latter are employees or that the latter do not exercise significant authority. We agree that ALJs are not identical to STJs. But, as explainéd in detail above, STJs and ALJs closely resemble one another where it counts. SEC ALJs can still be inferior officers without possessing identical powers as STJs, just like STJs can still be inferior officers without possessing identical powers as FEC commissioners and assistant surgeons. See Buckley, 424 U.S. at 125-26, 96 S.Ct. 612; Moore, 95 U.S. at 762.[43]
*1188 Third, the dissent expresses concerns about “the probable consequences of today’s decision.” Dissent at 1199. It goes on to raise issues that are not before us and that the parties did not brief.
We recognize that our holding potentially implicates other questions. But no other issues have been presented to us here, and we therefore cannot address them. Nothing in this opinion should be read to answer any but the precise question before this court: whether SEC ALJs are employees or inferior officers. Questions about officer removal, officer status of other agencies’ ALJs, civil service protection, rulemaking, and retroactivity, see Dissent at 1199-1201, are not issues on appeal and have not been briefed by the parties. Having answered the question before us, and thus resolved Mr. Bandimere’s petition, we must leave for another day any other putative consequences of that conclusion.
III. CONCLUSION
SEC ALJs “are more than mere aids” to the agency. Samuels, 930 F.2d at 986. They “perform more than ministerial tasks.” Freytag, 501 U.S. at 881, 111 S.Ct. 2631. The governing statutes and regulations give them duties comparable to the STJs’ duties described in Freytag. SEC ALJs carry out “important functions,” id. at 882, 111 S.Ct. 2631, and “exercis[e] significant authority pursuant to the laws of the United States,” Buckley, 424 U.S. at 126, 96 S.Ct. 612. The SEC’s power -to review its ALJs does not transform them into lesser functionaries." Rather, it shows the ALJs are inferior officers subordinate to the SEC commissioners. Edmond, 520 U.S. at 663, 117 S.Ct. 1573.
The SEC ALJ held his office unconstitutionally when he presided over Mr. Bandimere’s hearing. We grant the petition for review and set aside the SEC’s opinion.

. Office of Pers. Mgmt., Historical Federal Workforce Tables, https://perma.cc/LZ7P-EPAG. The first census in 1790 counted 3.9 . million inhabitants in the United States. U.S. Census Bureau, 1790 Overview, https:// perma.cc/EYF2-4K2L. The Perma.cc links throughout this opinion archive the referenced webpages.

. Other SEC respondents have attacked the validity of SEC AUs by filing collateral lawsuits attempting to enjoin administrative enforcement actions. Circuit courts have rejected these attempts, holding that federal courts lacked jurisdiction because the respondents had failed to raise and exhaust the argument in the administrative proceedings. See, e.g., Hill v. SEC, 825 F.3d 1236 (11th Cir. 2016); Tilton v. SEC, 824 F.3d 276 (2d Cir. 2016); Jarkesy v. SEC, 803 F.3d 9 (D.C. Cir. 2015); Bebo v. SEC, 799 F.3d 765 (7th Cir. 2015). ■Here, Mr. Bandimere did not file a collateral lawsuit. He instead raised his constitutional argument before the SEC, which rejected it. We therefore have jurisdiction to address the Appointments Clause issue as properly presented in Mr. Bandimere’s petition for review.

. Specifically, the SEC held him liable for (1) securities fraud under Section 17(a) of the Securities Act of 1933 (“Securities Act”), Section 10(b) of the Securities and Exchange Act of 1934 (“Exchange Act”), and 17 C.F.R. § 24,0.10b-5; (2) failure to register as a broker before selling securities under Exchange Act Section 15(a); and (3) failure to register the securities he was selling under Securities Act Sections 5(a) and (c). SEC Release No. 9972, 2015 WL 6575665, at *2, *4, *7, *17.

. Mr. Bandimere’s petition states, "The [SEC’s] Opinion must be vacated because it resulted from a process in which an improperly appointed inferior officer played an integral role.” Aplt. Br. at 18; see also id. at 10, 13.

. James Madison argued in Federalist Nos. 48 and 51 that checks and balances are needed to sustain a workable separation of powers. The Federalist Nos. 48 and 51, at 308, 318-19 (James Madison) (Clinton Rossiter ed., 1961); see also M.J.C. Vile, Constitutionalism and the Separation of Powers 153, 159-60 (1967).

. In Federalist No. 76, Alexander Hamilton explained the Senate-approval requirement "would be an excellent check upon a spirit of favoritism in the President, and would tend greatly to prevent the appointment of unfit characters from State prejudice, from family connection, from personal attachment, or from a view to popularity.” The Federalist No. 76, at 456 (Alexander Hamilton) (Clinton Rossiter ed., 1961).
In Weiss v. United States, 510 U.S. 163, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994), the Supreme Court stated the Framers structured “an alternative appointment method for inferior .officers” to promote "accountability and check govermnental power: any decision to dispense with Presidential appointment and Senate confirmation is Congress’s to make, not the President's, but Congress's authority is limited to assigning the appointing power to the highly accountable President or the heads of federal departments, or, where appropriate, to the courts of law.” 510 U.S. at 187, 114 S.Ct. 752.

. Other uses of “inferior'' in the Constitution confirm the term speaks to a hierarchical, subordinate-superior relationship. The word appears once in Article I and twice in Article III, each time describing.courts "inferior” to the Supreme Court. U.S. Const. art. I, § 8, cl. 9; id. art. III, § 1; see also Akhil Reed Amar, Intratextualism, 112 Harv. L. Rev. 747, 805-07 (1999) (discussing the use of “inferior” in Articles I, II, and III).
Statements from Alexander Hamilton and James Madison also indicate "inferior” means subordinate. In Federalist No. 81, Hamilton described inferior courts as those "subordinate to the Supreme.” The Federalist No. 81, at 484 (Alexander Hamilton) (Clinton Rossiter ed., 1961). In the brief debate about the Excepting Clause at the Federal Constitutional Convention in 1787, Madison "mentionfed] (as in apparent contrast to the ‘inferior officers' covered by the provision) ‘Superior Officers.’ ” Morrison v. Olson, 487 U.S. 654, 720, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (Scalia, J., dissenting) (citing 2 The Records of the Federal Convention of 1787 627-28 (M. Farrand ed., rev. ed. 1966)). He also referred to "subordinate officers” in contradistinction to "principal officers” when explaining the appointment power during the Virginia ratification convention. 3 The Debates in the Several State Conventions on the Adoption of the Federal Constitution 409-10 (Jonathan Elliot ed., 2d ed. 1836); see also Tuan Samahon, Are Bankruptcy Judges Unconstitutional7 An Appointments Clause Challenge, 60 Hastings L.J. 233, 251 (2008) (discussing Madison’s remarks at the Virginia convention).

. See also Edmond, 520 U.S. at 661, 117 S.Ct. 1573 (listing examples of inferior officers); Free Enter. Fund, 561 U.S. at 540, 130 S.Ct. 3138 (Breyer, J., dissenting) (listing examples of officers).

. As discussed below, Ballard v. Commissioner of Internal Revenue, 544 U.S. 40, 125 S.Ct. 1270, 161 L.Ed.2d 227 (2005), spelled out the STJs' and Tax Court judges' collaborative decision-making process in which STJs and Tax Court judges jointly "worked over” STJs’ preliminary "in-house drafts” to produce an opinion, 544 U.S. at 42, 125 S.Ct. 1270.

. In Samuels, the Second Circuit concluded STJs are inferior officers. 930 F.2d at 985. It stated:
Although the ultimate decisional authority in cases under section 7443A(b)(4) rests with the Tax Court judges, the special trial judges do exercise a great deal of authority in such cases. The special trial judges are more than mere aids to the judges of the Tax Court. They take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders. Contrary to the contentions of the Commissioner, the degree of authority exercised by special trial judges is "significant.” They exercise a great deal of discretion and perform important functions, characteristics that we find to be inconsistent with the classifications of "lesser functionary” or mere employee.
Id. at 985-86 (quoting Buckley, 424 U.S. at 126, 96 S.Ct. 612).
In First Western, the Tax Court concluded STJs are inferior officers: "Because [they] may be assigned any case and may enter decisions in certain cases, it follows that special trial judges exercise significant authority.” 94 T.C. at 557.
Although a factor, final decision-making power was not the linchpin of the Tax Court’s analysis. Id. And in any event, the Frey tag Court endorsed the Second Circuit’s and Tax Court's analyses because they relied on “the degree of authority” STJs possessed. Freytag, 501 U.S. at 881, 111 S.Ct. 2631.

. See Vanessa K. Burrows, Cong. Res. Serv., Administrative Law Judges: An Overview at 2 (2010), https://perma.cc/T8YY-EE7F; Robin J. Arzt et aL, Fed. Admin. Law Judge Found., Advancing the Judicial Independence and Efficiency of the Administrative Judiciary: A Report to the President-Elect of the United States, 29 J. Nat'l Ass’n Admin. L. Judiciary 93, 101 (2009),

. Many of the SEC regulations refer to the duties of the "hearing officer.” Under 17 C.F.R. § 201.101(a)(5), a “hearing officer” includes an ALJ. This opinion applies only to SEC ALJs specifically and not to hearing officers generally.

. The dissent’s concern about how this opinion might affect the SEC AUs’ role in rule-making is misplaced. Dissent at 1200-01. SEC ALJs do not have a rulemaking role: the Exchange Act does not allow the SEC to delegate rulemaking authority to its ALJs. 15 U.S.C. § 78d-1(a) (“Nothing in this'Section shall be deemed ... to authorize the delegation of the function of rule making....”); see also Raymond J. Lucia Cos., Inc. v. SEC, 832 F.3d 277, 281 (D.C. Cir. 2016) (stating "the authority to delegate [does] not extend- to the [SEC’-s] rulemaking authority”). Other agencies' ALJs rarely exercise rulemaking authority. See, e.g., Perez v. Mortg. Bankers Ass'n, — U.S. —, 135 S.Ct. 1199, 1222 n.5, 191 L.Ed.2d 186 (2015) (Thomas, J., concurring) (“Today, ... formal rulemaking is the Yeti of administrative law. There are isolated sightings of it in the ratemaking context, but elsewhere it proves elusive.”); Kent Barnett, Resolving the ALJ Quandary, 66 Vand. L. Rev. 797 (2013) ("[FJormal rulemaking is extremely rare....”). Nevertheless, to the extent the dissent is concerned with other ALJs’ rule-making authority, we do not address the issue - -because our sole question is whether - SEC ALJs are inferior officers,

. The SEC concedes that the way it appoints its ALJs does not comply with the Appointments Clause, -SEC Release No. 9972, 2015 WL 6575665 at■•19. .

. 17 C.F.R. § 201.111.

. 5 U.S.C. § 556(b), (c)(4):

. 17 C.F.R.. §§ 201.230, 201.233.

. Id. § 556(c)(3); 17 C.F.R. § 200.14(a)(3).

. 17 C.F.R. § 201.111(c).

. 5 U.S.C. § 556(c)(9); 17 C.F.R. §§ 200.14(a)(3), (7), 201.111(h), 201.220, 201.250.

. 5 U.S.C. § 556(c)(2); 17 C.F.R. §§ 200.14(a)(2), 201.111(b).

. 5 U.S.C. § 556(b); 17 C.F.R. § 200.14(a).

. SEC Release No. 9972, 2015 WL 6575665, at *15 n.83 (deferring to SEC ALJ’s credibility findings in the face of conflicting testimony). The dissent argues STJs exercise "significant authority” because the Tax Court was " 'required to defer’ to the [STJs’] factual and credibility findings 'unless they were clearly erroneous,' ” Dissent at 1195 (quoting Landry, 204 F.3d at 1133). But SEC ALJs’ credibility findings also receive deference. The SEC affords their credibility findings "considerable weight and deference,” Thomas C. Bridge, SEC Release No. 9068, 2009 WL 3100582, at *18 n.75 (Sept. 29, 2009), and accepts the findings "absent substantial evidence to the contrary,” Steven Altman, SEC Release No. 63306, 2010 WL 5092725, at *10 (Nov. 10, 2010). See also Robert Thomas Clawson, SEC Release No. 48143, 2003 WL 21539920, at *2 (July 9, 2003) (stating the SEC "accepts” the ALJs' credibility findings "absent overwhelming evidence to the contrary”). Both the Tax Court and the SEC defer to credibility findings but are not required to accept those findings if they are undermined by other evidence. Thus, SEC ALJs, like STJs, exercise significant authority in part because the SEC defers to their credibility findings.

. 5 U.S.C. § 556(c)(10); 17 C.F.R. §§ 200.14(a)(8), 200.30-9(a), 201.111(i), 201.360; see also SEC Release No. 507, 2013 WL 5553898.

. 15 U.S.C. § 78d-1(c). The SEC and file dissent argue the SEC ALJs do not exercise significant authority when issuing initial decisions because the agency retains a right to review the decisions de novo. But this argument is incomplete. The agency has discretion to engage in de novo review, 15 U.S.C. § 78d-1(b), but also has discretion not to engage in de novo review before an initial decision becomes final, 17 C.F.R. § 201.360(d)(2) (stating the agency can make an initial decision final by entering an order). In fact, the agency has no duty, based on the regulation’s plain language, to review an unchallenged initial decision before entering an order stating the decision is final. 17 C.F.R. § 201.360(d)(2). Thus, SEC ALJs exercise significant authority in part because their initial decisions can and do become final without plenary agency review. Indeed, 90 percent.of those initial decisions become final without plenary review. SEC, ALJ Initial Decisions, https://www.sec. gov/alj/aljdec.shtml (archiving initial decisions); see also Amici Br. at 13-14,
Further, an SEC AU’s authority to issue an initial decision is significant because, even if reviewed de novo, the ALJ plays a significant role as detailed above in conducting proceedings and developing the record leading to the decision, and the decision publicly, states whether respondents have violated securities laws and imposes penalties for violations. Id. § 201.360(c) (requiring the agency to publish the initial decision on the SEC docket).

. 17 C.F.R. § 201.411(b)(2).

. 17 C.F.R. § 201.155.

. 5 U.S.C. § 556(c)(6), (8); 17 C.F.R. § 201.111(e).

. 17 C.F.R. §§ 200.30-9, 201.531; see also 15 U.S.C. § 78u-3(c) (describing temporary order); 17 C.F.R. § 201.101(a)(ll) (stating a temporary sanction is "a temporary cease- and-desist order or a temporary suspension of registration”); id. §§ 201.510(b), 201.512(a), 201.521(b), 201.522(a) (describing a temporary sanction and stating an SEC commissioner presides over the hearing and that the agency must' issue the order); id. § 201.531(a)(1) (stating an initial decision "shall specify” which terms or conditions of a temporary sanction "shall become permanent”); id. § 201.531(a)(2) (stating an initial decision "shall specify” “whether a temporary suspension of a respondent's registration, if any, shall be made permanent”); id. § 201.531(b) (stating an order modifying a temporary sanction "shall be effective 14 days after service” (emphasis added)).

. The dissent complains that the majority opinion "lists the duties of SEC ALJs, without telling us which, if any, were more important to its decision than others and why.” Dissent at 1199. But this misses the point of our following Freytag. There, the Court identified four duties that supported the STJs' inferior officer status: "They take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders.” 501 U.S. at 881-82, 111 S.Ct. 2631. We point out above that SEC ALJs perform comparable duties, and we spell out even more of their discretionary functions.

.Those who challenge agency action typically have the burden to show prejudicial error. 5 U.S.C. § 706; Shinseki v. Sanders, 556 U.S. 396, 406-07, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009). The error here is structural because the Supreme Court has recog-‘ nized the separation of powers as a "structural safeguard.” Plant v. Spendthrift Farm, Inc., 514 U.S. 211, 239, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (emphasis omitted). Structural errors are not subject to prejudicial-error review. See Rivera v. Illinois, 556 U.S. 148, 161, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009) (stating “constitutional errors concerning the qualification of the jury or judge” require automatic reversal (emphasis omitted)); Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd., 796 F.3d 111, 123 (D.C. Cir. 2015) (“[A]n Appointments Clause violation is a structural error that warrants reversal regardless of whether prejudice can be shown.”); United States v. Solon, 596 F.3d 1206, 1211 (10th Cir. 2010) (stating structural errors are subject to automatic reversal).
Mr, Bandimere argues, "[The SEC ALJ] is an inferior officer whose unconstitutional appointment is a structural constitutional error that invalidates the proceeding.” Aplt. Br. at 18. The SEC does not dispute that an Appointments Clause error here is structural and that there is no need to show prejudice.

.Judge Randolph rebutted the Landry majority by arguing the following;
The [Freytag] Court introduced its alternative holding thus: "Even if the duties of special trial judges [just described] were not as significant as we and the two courts have found them to be, our conclusion would be unchanged.-” 501 U.S. at 882, 111 S.Ct. 2631 (italics added). What "conclusion” did the Court have in mind? The conclusion it had reached in the preceding paragraphs— namely, that although special trial judges may not render final decisions, they are nevertheless inferior officers of the United States within the meaning of Article II, § 2, cl. 2. The same conclusion, the same holding, had also been rendered in [Samuels], a decision the Supreme Court cited and expressly approved. See 501 U.S. at 881, 111 S.Ct. 2631. There the Second Circuit held that a special trial judge performing the same advisory function as the judge in Frey-tag was an inferior officer; the court of appeals did not mention the fact that in other types of cases, the judge could issue final judgments.
Landry, 204 F.3d at 1142 (Randolph, J., concurring).

. "The Commissioner concedes that in cases governed by subsections (b)(1), (2), and (3), special trial judges act as inferior officers who exercise independent authority.” 501 U.S. at 882, 111 S.Ct. 2631.

. “But the- Commissioner urges that petitioners may not rely on the extensive power wielded by the [STJ] in declaratory judgment proceedings and limited-amount tax cases because petitioners lack standing to assert the rights of taxpayers whose cases are assigned to [STJs] under subsections (b)(1), (2), and (3).” Id,

. Compare Freytag, 501 U.S. at 881-82; 111 S.Ct. 2631 (rejecting the government’s argument that STJs were employees when they lacked final decision-making power), with Landry, 204 F.3d at 1134 (asserting Freytag "laid exceptional stress on the STJs’ final decisionmaking power”).

. Whether SEC ALJs can enter final decisions is not dispositive to our holding because it was not dispositive to Freytag’s holding. Nevertheless, the SEC's argument that its ALJs can never enter final decisions is not airtight. Without a timely petition for review, SEC ALJ's actions are “deemed the action of the Commission.” 15 U.S.C. § 78d-l(c), The agency retains authority to review initial decisions de novo and may determine the date on which an unchallenged initial decision is final. 15 U.S.C. § 78d-l(b); 17 C.F.R. § 201.360(d)(2); Lucia, 832 F.3d at 286-87. But the agency may simply enter an order stating an initial decision is final without engaging in any review. 17 C.F.R. § 201.360(d)(2). And the agency can also decline to review an initial decision even when there is a timely petition for review. 17 C.F.R. § 201.411(b)(2). Thus, the Exchange Act and the agency’s regulations provide a path for an initial decision to become final without plenary agency review. In practice, most initial decisions follow that path—90 percent, See SEC, ALJ Initial Decisions, https://www.sec. gov/alj/aljdec.shtml.

. Edmond, 520 U.S. at 663, 117 S.Ct. 1573 (stating an inferior officer is "directed and supervised at some level by others who were appointed by Presidential nomination with advice and consent of the Senate”); Landry, 204 F.3d at 1142 (Randolph, J., concurring) ("The fact that an AU cannot render a final decision and is subject to the ultimate supervision of the FDIC shows only that the ALJ shares the common characteristic of an ‘inferior Officer.’ ”).

. In Bowsher, the Court stated:
No one can doubt that Congress-and the President are confronted with fiscal and economic problems of unprecedented magnitude, but “the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution. Convenience and efficiency are not the primary objectives— or the hallmarks—of democratic government.”
478 U.S. at 736, 106 S.Ct. 3181 (ellipsis omitted) (quoting Chadha, 462 U.S. at 944, 103 S.Ct. 2764).

. The dissent relies on Ballard, Dissent at 1194-95, yet objects to our use of the case to rebut its argument that the Tax Court deferred to STJs on questions of law. Id. at 1195-96 n.1. We do not rely on Ballard in reaching our holding or in responding to the SEC's arguments (because the SEC did not rely on it). We discuss the case only to respond to the dissent,

. The dissent states the Tax Court judge in Freytag adopted the STJ’s report "verbatim.” Dissent at 1196 n.l. There is no indication that is true. By the time of the Freytag trial in 1987, the Tax Court had been practicing the "collaborative process” described above for four years. See Ballard, 544 U.S. at 57, 125 S.Ct. 1270 (stating the Tax Court began the "collaborative process” in 1983). The Tax Court judge in Freytag received the STJ’s “report” and within four months adopted the STJ’s “opinion," Freytag, 501 U.S. at 872 n.2, 111 S.Ct. 2631 (emphasis added), which, as we learn from Ballard, is the document produced by the STJ and the Tax Court judge collaboratively, Ballard, 544 U.S. at 58, 125 S.Ct. 1270.
In other words, Freytag appears to be an example of the collaborative process at work—the STJ provided the Tax Court judge a "report,” and the Tax Court judge later adopted the STJ's "opinion”’ that resulted from the joint - efforts of the STJ and Tax Court judge. Nevertheless, the dissent infers the Tax Court judge adopted the STJ’s recommendation "verbatim,” Dissent at 1196 n.l, even though the Supreme Court declined "to assume ‘rubber stamp’ activity on the part of the [Tax Court judge],” Freytag, 501 U.S. at 872 n.2, 111 S.Ct. 2631.

. Amici report and the agency does not dispute that approximately 90 percent of SEC ALJs’ initial decisions issued in 2014 and 2015 became final without agency plenary review. Amici Br. at 13-14. Our review of the SEC’s archives confirms this information. See SEC; ALJ Initial Decisions, https://www.sec. gov/alj/aljdec.shtml.

. The dissent does not state it disagrees with our reading of Freytag. Rather, it relies on passages from the petitioners’ brief in Freytag to describe the characteristics of the STJs. What really counts, however, are the STJs’ features the Supreme Court relied on to determine they are inferior officers. The Freytag opinion—not one side’s advocacy brief—is the proper source for analysis. And, as our analysis shows, Freytag leads us to conclude the SEC ALJs are inferior officers.

. The dissent does not explain or even acknowledge the differences between inferior *1188 and principal officers. Nor does it recognize that inferior officers are subordinates who are still considered officers even when a superior officer directs their actions or makes final decisions.